## J. J. DULL v. D. ULSHAFER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 16, 1891—Decided March 9, 1891.

(*a*) In ejectment, two defendants were returned as served, a general appearance entered, and the general issue pleaded. Afterward, one of the defendants died, and his children, as parties next in interest, were substituted, saving to them the question of costs in case of disclaimer.

(*b*) At the trial, the parties next in interest, substituted for the deceased defendant, filed a disclaimer. The living defendant served filed no disclaimer. Submissible testimony was adduced on both sides, as to the possession, at the time the writ was served, of the defendants who were served and pleaded:

1. In such case, it was for the jury to determine whether the defendants served and pleading were in possession at the time of service; and the right of the plaintiff to proceed to a verdict carrying costs was not affected by the disclaimer of the parties next in interest, made when substituted: §§ 2, 3, act of April 13, 1807, 4 Sm. L. 476.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 355 January Term 1890, Sup. Ct.; court below, No. 2 March Term 1883, C. P.

On January 2, 1883, John P. Hobart, trustee for the heirs and devisees of Isaac Davis, deceased, and others, brought ejectment against Jacob Ulshafer, John Ulshafer, David Ulshafer, and others, for four hundred acres of land in North Union township. The writ was returned, served on January 20th as to the defendants named, and not found as to the others. On September 1, 1883, a general appearance and a plea of not guilty were entered.

The case was called for trial on January 31, 1887, when, on motion, the court directed the substitution of James J. Dull (alienee of John P. Hobart, trustee, and of the heirs of Isaac Davis, deceased), as the plaintiff.  The same day, Jacob Ulshafer, one of the defendants, having died after the commencement of the action and plea entered, it was agreed that Susan Ulshafer, the widow, and Pierce Zimmerman, and Priscilla Zimmerman, his wife, in right of said wife, should be substituted in the place and stead of Jacob Ulshafer, as parties next in interest, with the same effect as if said parties had been duly substituted in accordance with the act of assembly and had pleaded the general issue; the agreement "not to affect the rights of Susan Ulshafer, Daniel Ulshafer, Pierce Zimmerman and Priscilla Zimmerman, as to costs, in the event of filing a disclaimer."  On the same day, Susan Ulshafer, widow, Daniel Ulshafer, Pierce Zimmerman and Priscilla Zimmerman, his wife, filed a disclaimer of any actual possession of the premises described in the writ, and of any right, title or interest therein.  No disclaimer was filed on the part of David Ulshafer.

David Ulshafer and Jacob Ulshafer were the sons of Solomon Ulshafer; while Daniel Ulshafer and Priscilla Zimmerman were the only children of Jacob Ulshafer.

The plaintiff showed title to the land in dispute, assessment and payment of taxes thereon, and, after introducing testimony tending to show possession on the part of the defendants served, at the time of the service of the writ, rested.  As a defence in the case, testimony was introduced from which it was claimed that, so far as David Ulshafer was concerned, the sheriff's return of service of the writ upon him was an error, and that at the time of the return David Ulshafer was absent from the state; that as to Jacob Ulshafer, the latter by articles of agreement dated in March, 1885, had sold all his interest in the land in dispute to one Philip Miller, who had taken possession; and that, as to the children of Jacob Ulshafer, none of them had ever been in possession of the land.

At the close of the testimony, on motion of the plaintiff, the names of all the defendants except David Ulshafer and the children of Jacob Ulshafer were stricken from the record.  The court, BECHTEL, J., then submitted the cause to the jury, charging in part as follows:

Opinion of Court below.

[Now, therefore, if you believe the testimony of Solomon Ulshafer, Jacob Ulshafer, F. B. Bannan and Nelson Brandon, as to how Solomon and Jacob held the possession, then you should find a verdict for the plaintiff and against the defendants, Daniel Ulshafer, Priscilla Zimmerman, and Pierce Zimmerman, her husband; and if you further find that David Ulshafer was in the possession at the time the writ was served, then also as against him.] [1]. . . . .

We are requested to instruct you on the part of the defendants:

1. That under all the evidence in the case, the defendants are entitled to a verdict.

Answer: We refuse to so instruct you.[2]

—The jury returned a verdict in favor of the plaintiff and against David Ulshafer, Daniel Ulshafer, Priscilla Zimmerman and Pierce Zimmerman, defendants, for the premises described in the writ, with six cents damages and all costs.*

A rule for a new trial having been argued, the court, BECHTEL, J., on March 3, 1890, filed the following opinion:

The above suit was instituted by Jno. P. Hobart as trustee, etc., and thereafter the title which he held passed to James J. Dull, who is now the plaintiff. There would seem to be no doubt about the right of Dull to be placed upon this record as plaintiff, upon his showing that the plaintiff's title had been conveyed to him after suit brought. This is the object of the passage of the fourth section of the act of April 26, 1850, P. L. 591. The only one who could question his right to be thus placed upon record, is the plaintiff who instituted the suit, for he may deny that his title has passed to him after suit brought. This is the doctrine of Longbine v. Piper, 70 Pa. 378. In this case the plaintiff made no such denial, and did not object to the placing of said James J. Dull upon record as the plaintiff, but assented to such action.

The only parties upon whom the writ in this case was really served were Jacob Ulshafer and David Ulshafer. Jacob Ulshafer died after suit brought, and Daniel Ulshafer, Pierce Zimmerman and Priscilla Zimmerman, his wife, in right of the

---

* The plaintiff's bill of costs amounted to $21.18!

wife, were by agreement substituted on January 31, 1887, saving to them the question of costs in case of disclaimer. After the evidence had been closed, the plaintiff upon motion struck out all other defendants, thus leaving David Ulshafer and the children of Jacob Ulshafer the only ones remaining of record, as defendants.

The first question is, was there anything in this record to warrant or sustain a verdict as against David Ulshafer? This depends upon the testimony, and we have examined the evidence carefully in relation to this matter. The only witness who seems to have any knowledge upon this subject, in addition to that found in the evidence of the deputy sheriff, is Peter Van Blargen. He testifies that, as far as he knows, David Ulshafer was in Ohio in 1883 and 1884, and prior and subsequent to that time. He also says that David lived with his father Solomon, and was with him, about the time of his death, upon the land in controversy. Solomon, the father, died in or about 1870, and how long David continued there after that time does not clearly appear from this witness's testimony.

Now, we turn to the sheriff's return, and we find that he returns a personal service upon David Ulshafer on the twenty-fourth day of February, 1883. But, when in his return he names the ones mentioned in his writ that could not be found in the county, the name of David again appears. Of course, this presents a contradictory, if not an insensible return. In consequence of this character of return, the deputy sheriff B. F. Smith was called, and his attention directed thereto. He testifies that the name " David," in the list of those not found, is a mistake, that it should be "Sarah," and swears positively that he made a personal service upon David on the twenty-fourth day of February, 1883. If this evidence be correct, then Van Blargen's cannot be, for it places David Ulshafer in this county, on that day, and not in Ohio, as stated by Peter Van Blargen. In addition to this, counsel appeared generally, and thus admitted service upon David, as one of the defendants, and on the first of September, 1883, filed a plea for him and the other defendants. The return of the sheriff is prima facie evidence that the defendant was in possession of the property, for this is the meaning of the second section of the act of April

13, 1807, 4 Sm. L. 476. Besides, by pleading the general issue, the defendant admits himself to be in possession of the whole of the land claimed: Ulsh v. Strode, 13 Pa. 433, and Hill v. Hill, 43 Pa. 521.

With this character of evidence before us, we believed we were required to submit the question to the jury, to ascertain whether David Ulshafer was in possession when the writ was served. He filed no disclaimer, and made no pretence of title. Under such circumstances, to avoid a verdict for costs he should have disclaimed at the entry of the plea, or at a period sufficiently early to warn the plaintiff before the trial. Failing to do this, there was nothing left him but to prove he was not in possession, and this question of fact the jury have found against him: see Steinmets v. Logan, 3 W. 160; Kirkland v. Thompson, 51 Pa. 216; and Swayne v. Taylor, 2 Chest. Co. R. 84. We see no reason therefore for disturbing the verdict so far as David Ulshafer is concerned.

Jacob Ulshafer died in 1885, or about that time, leaving two children Daniel and Priscilla, the latter of whom is now the wife of Pierce Zimmerman, and these parties are of record as next in interest to Jacob Ulshafer. The defendant claims that Philip Miller, the vendee of Jacob Ulshafer, should have been put on record instead of the children of Ulshafer.

Miller claims under an agreement, dated March, 1885, in which Jacob Ulshafer agrees to sell to him his right of possession, and to deliver a deed therefor on the first of May, 1885. No deed to him was given in evidence, nor any evidence offered to show payment of purchase money under the terms of the agreement, although the greater portion of it was overdue. When it is borne in mind that Solomon Ulshafer, the father of Jacob, was a tenant under the plaintiff's title, and died upon the premises about 1870, that the evidence strongly indicates that Jacob was a tenant under the plaintiff's title, and that there is a provision in Miller's agreement that Ulshafer, the vendor, shall have, " on said premises the right as tenant as long as he shall desire, rent free," the agreement, to say the least of it, wears a suspicious look. Does it not really indicate an intention to hamper and delay the plaintiff in his action? Although Ulshafer died in 1885, and the contract provided for the delivery of a deed in May, 1885, no evi-

dence was given to show any effort to obtain a deed by specific performance of the contract.

But suppose Miller had actually obtained a deed, it does not follow that he would have a right to be put upon the record. In Loos v. Caldwell, 2 Miles 390, decided in 1840, Hill purchased from the defendant in ejectment, paid a very large consideration, obtained his deed, swore he had no knowledge of the existence of the ejectment, and himself asked to be placed on record, and his application was denied. There are authorities of like character under the act which permits a landlord to defend his tenant's title. When a party purchases, after suit brought, it has been repeatedly held he will not be put upon record: Brown v. O'Brien, 3 Clark 115; Penna. Canal Co. v. Iron Works, 7 Phila. 662. This subject was discussed by our present learned Chief Justice, in Stafford v. Wheeler, 93 Pa. 462, from which we gather that it is not a matter of right upon the part of a vendee, but in the sound discretion of the court, under the act of 1772. But the case in hand is governed by the act of 1807, and Miller never made application to be placed upon record, although he was present at the trial. The act of 1807 requires that the party next in interest shall be put upon record, and we doubt whether Miller can claim that he occupies that position in this case. Though the defendant quit possession after the service of the writ, it does not affect plaintiff's right to proceed : Zeigler v. Fisher, 3 Pa. 365. Whatever title Ulshafer had descended to his heirs; and if Miller under his agreement acquired any title, still the legal title remained with Ulshafer's heirs, so far as the record of this case shows. Under this state of proof, we think it was proper to put the heirs upon record.

It is true they disclaimed immediately after they were placed upon record, but if this action entitled them to a verdict, what becomes of the act of 1807? That act says, " No writ of ejectment shall abate by reason of the death of any plaintiff or defendant, but the person or persons next in interest may be substituted in the place of the plaintiff or defendant who shall have died pending the writ." The provisions of this act were applied in Ulshafer v. Stewart, 71 Pa. 170, in case of the death of the plaintiff after writ of error taken and before assignment of errors. Suppose the defendant, Jacob Ulshafer, had made

no contract of sale with Miller, and his heirs had disclaimed, could they defeat the plaintiff's right to proceed? If so, then the act of 1807 fails to save to the plaintiff his right of action, and serious questions may arise as to limitation. These heirs are not put upon record as claiming possession or title, but as parties next in interest to John Ulshafer who has been proved to have been in possession when the writ was served and for years thereafter. Under such circumstances, can any one doubt the right of the plaintiff to proceed, as against him, to recover costs, even though he claimed no title? If his heirs can defeat this right by disclaiming, then the writ has abated, notwithstanding the provisions of the act of 1807.

For the reasons given, we think the verdict should stand; and, if this be error as to the heirs of Jacob Ulshafer and otherwise correct, the Supreme Court have ample power to reverse as to them and affirm as to David Ulshafer.

And now, March 3, 1890, motion overruled and new trial refused.

—Judgment having been entered on the verdict, the defendants took this appeal, assigning for error:

1. The portion of the charge embraced in [ ] [1]
2. The answer to the defendant's point. [2]

*Mr. James Ryon* (with him *Mr. W. D. Seltzer*), for the appellants.

As to the effect of the disclaimer filed, counsel cited: Tripner v. Abrahams, 47 Pa. 230; Zeigler v. Fisher, 3 Pa. 365; McCanna v. Johnston, 19 Pa. 434; Bronson v. Lane, 91 Pa. 153; Bratton v. Mitchell, 5 W. 69.

*Mr. S. H. Kaercher* (with him *Mr. John P. Hobart*), for the appellee.

Counsel cited: Ulshafer v. Stewart, 71 Pa. 170; Ulshafer's App., 1 Walk. 457. As to abatement by death: § 3, act of April 13, 1807, 4 Sm. L. 477; Ulshafer v. Stewart, supra; Darnes v. Welsh, 7 S. & R. 202. That the plea of not guilty, admitted possession: Ulsh v. Strode, 13 Pa. 436. As to the effect of the return of service as to David Ulshafer: Helfenstein v. Leonard, 50 Pa. 475; § 2, act of April 13, 1807, 4 Sm. L. 476; Gratz v. Benner, 13 S. & R. 110; Cooper v. Smith, 9 S. & R.

26; Dietrick v. Mateer, 10 S. & R. 151; Zeigler v. Fisher, 3 Pa. 367.

PER CURIAM:

We think the portion of the charge referred to in the first assignment was fully warranted by the evidence. The remaining assignment alleges that the court erred in not giving a binding instruction in favor of the defendants. We cannot say there was error in this, as the case was one for a jury. It does not require discussion.

Judgment affirmed.